## HOWARD, Respondent, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Appellant.

**St. Louis Court of Appeals, February 21, 1905.**

1. **DAMAGES: Ejection of Train Porter: Notice.** In an action by a train porter against a railroad company for damages on account of injuries received in being ejected by the company's watchman, from a car in which he was sleeping at a terminal station, evidence that he and other porters had slept in the cars at the terminal stations for five years and that the company had issued an order forbidding them to do so, was sufficient to submit to the jury the question as to whether the company had knowledge of, and had consented to his sleeping in the car.

2. ——: ——: ——. If the plaintiff in such a case had been sleeping in the car at terminal points for a long time, with the implied permission of the railroad company, he could not be rightfully ejected from the car unless he had received proper notice that an order had been issued forbidding it.

3. **INSTRUCTION: Harmless Error.** An error in giving an instruction is harmless where it is in favor of the party complaining.

4. **DAMAGES: Injury to Nervous System.** Where plaintiff, in an action for personal injuries, testified that he was much affected, short winded, had severe pain in his breast in inclement weather, was not steady in his nerves, and lisped when talking, it was sufficient to authorize the jury to consider whether the plaintiff's nervous system had been injured.

5. ——: Personal Injuries: Medical Attendance. In an action for personal injuries, an instruction authorizing the jury to take into consideration the amount paid out for medical attendance, is error in the absence of evidence that the plaintiff had paid any expenses incurred in medical attendance.

6. **NEW TRIAL: Newly-Discovered Evidence.** A new trial upon the ground of newly-discovered evidence will not be granted, where such evidence does not go to the controlling issue in the case, and where it is not likely an opposite result will be reached on the merits if a new trial was granted.

Appeal from St. Louis City Circuit Court.—*Hon. James R. Kinealy,* Judge.

AFFIRMED, *si.*

*J. E. McKeighan, Edwin W. Lee* and *William R. Gentry* for appellant.

*H. E. Hofer, Phil H. Sheridan* and *Henry B. Davis* for respondent.

STATEMENT.

The plaintiff, a colored train porter, then in employ of the Chicago & Alton Railway Company, brought this action for damages consequent on injuries inflicted upon him by a watchman of defendant in attempting to eject plaintiff from a car of which he was in charge, belonging to the Chicago & Alton Railway Company, while it was lying in the terminal yards of defendant, on the night of February 6, 1903. Plaintiff, in setting forth his cause of action, charged that on the date stated, as porter and while in discharge of his duties, he was in a car of the Chicago & Alton Railway Company which had been delivered by defendant at the union depot in the city of St. Louis, and as such porter had the right to enter the car and for many years prior he had enjoyed free access to the car at all times by day and by night, and in common with other porters of the railway company was permitted and did sleep in his car while on defendant's tracks at the union depot. That on the night in question, while he was asleep in the car, defendant by one of its duly appointed and authorized servants and agents entered such car and intentionally, illegally, wrongfully and maliciously committed an assault and battery upon the person and body of plaintiff, by striking him with a club and by firing the contents of a loaded revolver into his body to his great injury and suffering as detailed, and damages, compensatory and punitive were prayed.

In its defense, defendant made general denial and continuing averred that as a railroad corporation it

owned and operated a large railroad yard, where many cars belonging to various railroad companies were received upon their arrival in the city of St. Louis and kept until their departure therefrom. That in the conduct of its business, it employed a night watchman whose duty it was to pass through the yards and protect the property of defendant and of other railroad corporations contained therein, and see that the rules of defendant were obeyed by all persons coming within said yard and enforce the rules of the various railroad companies, whose cars were in such yard, in so far as their rules affected the cars belonging to them and in such yard. That at the time, it was expressly forbidden by the rules and orders issued by the defendant and the Chicago & Alton Railway Company for porters or other persons to sleep in or occupy the cars belonging to the Chicago & Alton Railway Company while they were standing in the yard of defendant at night. That plaintiff knew such orders had been issued, or by the exercise of ordinary care in ascertaining the rules of the Chicago & Alton Railway Company, by which he was at the time employed as porter, he could have known that he or any other person was not allowed to occupy the cars of such railway company at night for the purpose of sleeping therein and knew, or by the exercise of ordinary care would have known, that he was not allowed by the rules of defendant to be in any car in its yards at night for the purpose of sleeping therein and on the occasion complained of by plaintiff, he was unlawfully and in violation of the rules of defendant and of the railway company occupying a car of the defendant in such yard at night and sleeping therein.

Proceeding, the answer recited that on this occasion, its night watchman, while in discharge of his duties as the servant of defendant, was making his rounds through its yard and the cars belonging to the various railroad companies therein, in obedience to in-

structions to him issued by defendant for the purpose of enforcing the rules of defendant and of the Chicago & Alton Railway Company and to eject from the cars any persons found occupying the same in violation of such rules; that upon entering a car of this company this night watchman discovered plaintiff occupying it asleep or apparently sleeping, and aroused him, informing him he was violating the rules by sleeping in the car, and ordered him to leave it, which order plaintiff refused to obey and declared he would continue to occupy it, and the watchman insisting on obedience to his order, informed plaintiff that he would be back later on and plaintiff must leave the car or be ejected upon his return. That the watchman then left plaintiff and before returning reported plaintiff's conduct to the Chicago & Alton Railway Company's night foreman in the yard and was by him assured that the order and rule prohibiting porters from sleeping in such cars were in force and requested the watchman to enforce them. Returning later to the car where plaintiff was, the watchman found him still occupying it for the purpose of sleeping therein and again aroused him and ordered him to leave the car, which plaintiff in angry and threatening manner, with insulting language refused to do and thereupon the watchman proceeded to eject him from such car and used and intended to use no more force than was reasonably necessary to accomplish such purpose, but plaintiff resisted the attempt, used threatening and abusive language toward the watchman, and seizing an iron poker or bar in a threatening and angry manner advanced toward the watchman with such piece of iron uplifted, for the purpose of making an assault upon him and placed the safety and life of the watchman in imminent danger; that the watchman commanded plaintiff to stop and plaintiff continued to proceed in such a manner and while so proceeding to make such assault upon the

watchman, the latter in necessary protection of his life and personal safety, fired one shot at plaintiff which took effect and caused him to cease attempting to assault him. The answer concluded with specific denial that its watchman struck plaintiff with a club or other weapon and affirmed that in so shooting plaintiff, the watchman employed only such force as was reasonably necessary for his own personal safety and for the protection of his life to repel the assault which plaintiff at the time was making upon him.

A reply denying the affirmative defenses completed the issues. A jury trial terminated in verdict for the plaintiff for $3,000, and this appeal ensued.

The testimony of plaintiff tended to establish the allegations of his petition and that he had been employed for several years as a train porter by the railway company designated on various runs, frequently changed, and while thus employed it had been his custom, whenever at a terminal point on line of the company, to sleep in the coach of which he was in charge, and he had never met any objection nor heard of any order or rule issued by the company prohibiting him or other porters from sleeping in its coaches. That on the night of February 6, 1903, he had arranged the seats of the chair car lying in the yard of defendant as a bed, and was asleep when the watchman entered between eight and nine o'clock, and asked him what he was doing there, to which he replied that he was porter of that car, came in on the train and was going to sleep in there, which the watchman in turn denied, stating that he was not, that he had orders that no one should sleep in the car, and plaintiff informed him he had been sleeping in the car for nearly five years, and no orders had issued that porters should not sleep in the cars and that he was going to sleep in there that night, the watchman then departing without exhibiting any evidence of his authority or official character. Between twelve and one o'clock, the watchman returned

with a club, with which he was not armed on his first visit, and striking and cursing plaintiff ordered him out, stating that he had returned to put him out. Plaintiff replied he was not going out, that he was not going to stand around in the streets all night, he was the porter of the car, came in on it and was going to stay there. Thereupon the watchman struck him additional blows on the body and plaintiff told him if he struck him again he would get something and knock him in the head with it, and upon receiving a further blow he went to the stove, picked up the poker, and turned around facing the watchman, who shot him through the breast and lungs.

The evidence introduced by defendant tended to prove that the trainmaster of the Chicago & Alton Railway Company, in control of its train porters had issued, in the month of November prior to the occurrence, an order prohibiting its porters from sleeping in its coaches at terminal points; that pursuant to such order of this trainmaster, the assistant and night foreman of such railway at St. Louis placed in hands of an agent of defendant a key to its coaches and requested defendant to eject all porters found sleeping in its equipment at night; that this key and message were delivered to defendant's night watchman, who found the plaintiff in the coach, and informed him of his position and the orders; that plaintiff declined to go, whereupon the watchman told him he had put a man out the night before without trouble, and he did not want any trouble with him, and he would return expecting to find him out of the car, and plaintiff repeated he was going to remain in the car. After consulting the assistant yard foreman of the railway company and being instructed by him that there were orders against porters sleeping in their cars, he returned, found plaintiff apparently sleeping, and spoke to him without receiving an answer, and then poked his legs with his stick and aroused him; that he again

said he was not going out and the watchman answered he came to put him out, and plaintiff retorted there was going to be serious trouble and the watchman stepping back drew his pistol from his pocket, upon seeing which, applying a vile epithet and exclaiming "you will have to kill me now, you or I will have to die in this car," plaintiff rushed back to the door and came on with the poker in his hands, when believing his life was endangered, the watchman shot him, causing him to fall into a seat.

The general course of the Chicago & Alton Railway Company's trainmaster to post upon a bulletin in his office all orders affecting the government of railroad porters was permitted to be shown, but its trainmaster could not testify positively that the order in question had been so posted, and plaintiff while admitting that, as was his duty, he examined every few days the bulletin board and read all posted orders, denied ever seeing such order.

BLAND, P. J. (after stating the facts).—1.   The contention of appellant is that there is no evidence that the Chicago & Alton Railway Company expressly consented that its porters might sleep in its cars at terminal stations, and that there is a very important element of implied consent not present in the case as shown by the entire record, that is, the element of knowledge on the part of the Chicago & Alton Railway Company, through some of its officers.   This contention of appellant, I think, is not borne out by the evidence.   If plaintiff, as he testified, had been sleeping in these cars for five years, and other porters had been doing the same thing, these facts of themselves warrant an inference that the officers of the railway company had knowledge of the fact.   It can hardly be supposed that these porters slept in the cars belonging to this company for four or five years and the officers of the company were ignorant of the fact.   And the fact

that the order was issued prohibiting trainmen from sleeping in the cars presupposes that the company had some knowledge or information that they were in the habit of doing so, and hence I do not think the court erred in submitting this question to the jury. If the plaintiff by expressed or implied permission of the railway company had been sleeping in its cars at terminal points for a long time, then he could not be rightfully ejected on the night he was shot, unless the prohibitory notice had been posted on the bulletin board at Chicago (where the evidence shows such notices are posted for the information of all trainmen) or unless he was informed by some one authorized to speak for the company that the order had been issued.

2. The proviso at the end of the instruction, to the effect that if the jury believed from the evidence that the watchman who shot plaintiff was not acting in obedience to any order given him by his foreman pursuant to request from the Chicago & Alton R. R. company, is in the teeth of the evidence, nor does it correctly declare the law of the case. The watchman, according to the evidence, was acting under orders from the defendant company and was, according to his evidence, attempting to carry out his orders and shot the plaintiff in self-defense. If he had no orders to put persons out of the cars, then the defendant would not be liable, however wanton or reckless he might have been, for he would have been acting beyond and outside the scope of his employment. The proviso, however, is against the plaintiff and in favor of the defendant and for this reason furnishes no ground for reversal. The second instruction is in harmony with our view of the law of the case and is correct as far as it goes.

3. The following clause in the instruction on the measure of damages "for any injury the jury find from the evidence he suffered in his nervous system, if any, and for any reasonable sum paid out by him

for medical attention," appellant insists is not supported by any evidence. Speaking of the effect of his injury, plaintiff said: "It has affected me very much; it has affected my wind, very short-winded now, and at the inclemency of the weather I have severe pain right in that breast (indicating) it goes right through me. I am not as steady in my nerves as I were before, I know that. I always lisped a little in talking, but I am much worse since I have been shot." I think this evidence was sufficient to authorize the jury to consider whether or not any injury to plaintiff's nervous system had been caused by the shock. In respect to medical attendance, plaintiff testified that he employed a physician in Chicago (to which city he went after leaving the hospital in St. Louis) who had paid him a great many visits; that he frequently went to the doctor's office for treatment and was still taking a tonic prescribed by him; that he did not know how much he owed the doctor; that he had been his family physician for ten years and that he had paid him some on account of the treatment for his injury but not all that he owed him. Dr. Nietert testified that fifty dollars would be a reasonable charge for the services of the Chicago physician. The instruction authorized the award for what had been *paid out* by plaintiff for medical attendance and did not embrace the expenses incurred on account of medical attention made necessary by the injury. The evidence does not show what sum plaintiff paid out, and under the instruction the jury was authorized to guess at the amount or else entirely ignore this element of damages. Whether it guessed an amount and incorporated the same in its verdict or omitted to find anything paid out for medical services is left to conjecture. This portion of the instruction is clearly erroneous for want of any definite evidence as to the amount paid out by plaintiff for medical services.

The witness on whom defendant relied to prove

that the prohibitory notice had been posted, on cross-examination, showed that his memory was not clear on the point and he was not positive that the notice was, in fact, posted. In its motion for new trial, defendant filed an affidavit to the effect that it was misled and deceived by the evidence of this witness in respect to the posting of the notice, and filed affidavits of other persons, not witnesses at the trial, showing that the notice had been posted and had been brought to the actual notice of the plaintiff, and on the strength of these affidavits moved for a new trial on the ground of newly-discovered evidence. The refusal to grant the new trial is assigned as error. The right of plaintiff to recover is not dependent upon whether or not the notice was posted or whether or not he had actual notice of it, but on the excessive force that was used to eject him from the car. In fact, his right to recover hinged, in the main, on whether the watchman shot him in necessary self-defense or acted wantonly and recklessly. That this was the controlling issue in the case is shown by the instructions given for both parties and it is not likely an opposite result would be reached on the merits if a new trial should be granted. Where this is the case it is not error to refuse to grant a new trial. [Mayor of Liberty v. Burns, 114 Mo. 426, 19 S. W. 1107, 21 S. W. 728; State v. Stewart, 127 Mo. 290, 29 S. W. 986; Dean v. Chandler, 44 Mo. App. 338; Madden v. Realty Co., 75 Mo. App. 359.] New trials on the ground of newly-discovered evidence are not favored. [State v. Bybee, 149 Mo. 632.]

The evidence shows that the value of the medical attention given plaintiff by the physician he employed in Chicago was fifty dollars. On this evidence fifty dollars was the maximum sum the jury could have allowed for medical services, hence if this amount is deducted from the judgment, the error in the instruction on the measure of damages will not prejudice the defendant. Wherefore it is considered that if within ten

days the plaintiff, in writing, remit fifty dollars of the judgment, the same shall stand affirmed for $2,950; if the remittitur be not made the judgment will be reversed and the cause remanded.   All concur.